

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITADEL GROUP LIMITED, ) <br> a Delaware Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MERLE WEST MEDICAL CENTER, INC., ) <br> an Oregon nonprofit public benefit corporation, ) <br> ) <br> Defendant. ) | No. 06-C-6162 <br><br> Judge Joan Humphrey Lefkow <br><br> Magistrate Judge Nolan <br><br> Jury Trial Demanded |

## MEMORANDUM OPINION AND ORDER

Defendant Merle West Medical Center, Inc. ("Merle West") removed this case to this court after it was originally filed in the Circuit Court of Cook County by Plaintiff Citadel Group Limited ("Citadel"). Merle West then moved to dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and to dismiss Citadel's claim for attorneys' fees under Rule 12(b)(6) [Dkt. No. 7]. For the following reasons, the motion is denied.[1]

### 1. Facts

Citadel's business involves investment in and development of medical office buildings and ancillary medical facilities.[2] It is a Delaware corporation with its principal place of business in Chicago, Illinois. Merle West operates a hospital and other medical facilities in Klamath

---

[1] This court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

[2] The facts are taken from the complaint and from affidavits filed in connection with this motion. They are essentially undisputed.

1

Falls, Oregon. It is an Oregon nonprofit public benefit corporation with its principal place of business in Klamath Falls.

Sometime in early 2004, an investment banker for Merle West gave Citadel a tip that Merle West might be interested in Citadel's services. Citadel called Merle West and the parties began discussing a deal whereby Citadel would acquire and finance a medical building that Merle West owns in Klamath Falls and then lease a portion of the building back to Merle West, providing Merle West with cash and allowing it to retain operational control of the building.

On several occasions between June 2004 and October 2005, Merle West sent documents to Citadel in Chicago, including detailed financial documents and information about the building, and Citadel in turn sent documents back to Merle West. Citadel sent Merle West a proposal on December 22, 2004. Merle West accepted it on March 25, 2005 and sent Citadel a $40,000 good faith deposit. Merle West signed an "Authorization to Proceed" that said,

> [Merle West] authorizes [Citadel]to proceed with Property acquisition and will deliver a 0.50% good faith deposit upon execution of this proposal. [Merle West] is responsible for all out-of-pocket costs associated with the transaction, whether or not the transaction closes. Transaction fees and expenses may be included in the acquisition budget and hence, refunded to [Merle West] at transaction closing. Accepted and approved this 25th day of March 2005.

In furtherance of the transaction, Citadel retained attorneys, accountants, banks, and others, most if not all of which were Illinois companies, to prepare necessary documents. Citadel sent Merle West a list of all the parties working on the transaction on June 28, 2005.

Approximately 18 conference calls between Citadel, Merle West and its attorney, and the other companies working on the transaction occurred between September 7, 2004 and October 5, 2005. The parties also exchanged drafts of documents needed for the transaction.

Merle West decided not to complete the transaction in October of 2005. No agent or employee of Merle West ever came to Illinois in connection with the transaction, although it had been scheduled to close in Chicago in the offices of one of the law firms involved.

## 2. Personal jurisdiction

If challenged by a defendant, the plaintiff has the burden of showing that the court's exercise of personal jurisdiction is proper. *George S. May Int'l Co. v. Xcentric Ventures, LLC*, 409 F. Supp. 2d 1052, 1055 (N.D. Ill. 2006) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)). The court may receive and consider affidavits to determine whether it has personal jurisdiction over a defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citing *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)). When the court rules on the basis of written materials and without conducting an evidentiary hearing, the plaintiff need only make out a *prima facie* case of personal jurisdiction. *Id.* In evaluating whether this standard has been satisfied, the court resolves all disputes concerning the relevant facts in favor of the plaintiff unless they are controverted by an affidavit of the defendant to which the plaintiff has not responded. *Id.* (citing *Nelson*, 717 F.2d at 1123); *First Nat. Bank v. El Camino Resources, Ltd.*, 447 F. Supp. 2d 902, 906 (N.D. Ill. 2006).

Federal courts look to the law of their forum state to determine whether the exercise of personal jurisdiction over a non-resident defendant is proper. *George S. May*, 409 F. Supp. 2d at 1055 (citing *Edelson v. Ch'ien*, 352 F. Supp. 2d 861, 865-66 (N.D. Ill. 2005)); *see also* Fed. R. Civ. P. 4(c). Here, jurisdiction is premised on Illinois's long-arm statute, which submits a person to the jurisdiction of Illinois courts as to any cause of action that arises out of that person's

3

"transaction of any business within the state" or "making or performing of any contract or promise substantially connected with this State." 735 Ill. Comp. Stat. 5/2-209(a)(1), (7). Illinois also allows for jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2-209(c).[3]

In addition to considering Illinois's statutory grant of personal jurisdiction, the court must also consider whether exercising jurisdiction would be consistent with state and federal guarantees of due process. *George S. May*, 409 F. Supp. 2d at 1055 (citing *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004)). The Seventh Circuit has determined that this inquiry is essentially the same under both the Illinois Constitution and the Constitution of the United States and that therefore only one due process inquiry is necessary. *Id.* (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002); *Edelson*, 352 F. Supp. 2d at 866).

The due process inquiry begins with the well known "minimum contacts" rule from *Int'l Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (citations omitted): "Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" In *Hanson v. Denckla*, the Court explained that "minimum contacts" requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253, 78 S. Ct.

---

[3] Citadel does not contend that Merle West should be subject to general jurisdiction in Illinois. Therefore, the court will only address whether Merle West is subject to specific jurisdiction arising out of the allegedly breached contract.

4

1228, 1240, 2 L. Ed. 2d 1283 (1958). The purposeful establishment of "minimum contacts" remains the "constitutional touchstone." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985). It ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the unilateral actions of another party who claims some relationship with the defendant. *Burger King*, 471 U.S. at 475 (citations omitted); *Hanson*, 357 U.S. at 253.

Once minimum contacts have been found to exist, the analysis moves on to determine whether the exercise of jurisdiction would comport with "fair play and substantial justice." *Central States*, 230 F.3d at 943 (citing *Burger King*, 471 U.S. at 476-77). The court considers, among other things, the "burden on the defendant" to litigate in the forum, "the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute, and the shared interest of the several States in furthering fundamental substantive social policies." *Purdue Research Found.*, 338 F.3d at 781 (citing *Burger King*, 471 U.S. at 477).

"[W]ith respect to interstate contractual obligations, [the Supreme Court] has emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." *Burger King*, 471 U.S. at 473 (citations omitted); *see also Heritage House Restaurants, Inc.* v. *Continental Funding Group, Inc.*, 906 F.2d 276, 280-81 (7th Cir. 1990). The crucial inquiry is whether the defendant's conduct, knowledge, and connection with the forum are such that it should reasonably anticipate being haled into court there. *Central States, Southeast & Southwest Areas Pension Fund* v. *Reimer Express World Corp.*, 230 F.3d

934, 943 (7th Cir. 2000) (citing *Burger King*, 471 U.S. at 474; *RAR*, 107 F.3d at 1277); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). The analysis is ultimately one of the totality of the circumstances, where the factors include the prior negotiations between the parties and the contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. *Burger King*, 471 U.S. at 479; *Purdue*, 338 F.3d at 781.

The parties in this case make their arguments for and against jurisdiction employing the various factors that courts have taken into account in assessing the appropriateness of exercising personal jurisdiction in contract cases. Those factors include whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois,[4] whether payment was to be made in Illinois,[5] whether the defendant was ever physically present in Illinois in connection with the contract,[6] whether the Illinois plaintiff or the out of state defendant initiated the transaction,[7] and the occurrence of telephone calls or faxes to and from Illinois.[8] Merle West argues, correctly, that none of these factors alone is necessarily sufficient for the court to exercise personal jurisdiction, while Citadel responds (also correctly) that each is relevant and can support an exercise of jurisdiction in an appropriate case. Not surprisingly, given the nature of the

---

[4] *See, e.g., Continental Bank N.A. v. Everett*, 742 F. Supp. 508, 509 (N.D. Ill. 1990); *Empress Intern., Ltd. v. Riverside Seafoods, Inc.*, 445 N.E.2d 371, 373 112 Ill. App. 3d 149, 153 (Ill. App. Ct. 1st Dist. 1983).

[5] *See, e.g., Empress Intern.*, 445 N.E.2d at 373.

[6] *See, e.g., Burger King*, 471 U.S. at 476; *Purdue*, 338 F.2d at 781; *Heritage House*, 906 F.2d at 283.

[7] *See, e.g., Continental Bank*, 742 F. Supp. at 509; *Publications Intern., Ltd. v. McRae*, 953 F. Supp. 223, 224 (N.D. Ill. 1996); *Empress Intern.*, 445 N.E.2d at 373; *Heritage House*, 906 F.2d at 283.

[8] *See, e.g, Federated Rural Electric Insurance Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 395 (7th Cir. 1996); *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 993 (N.D. Ill. 2001); *Publications Intern.*, 953 F. Supp. at 224; *Konicki v. Wirta*, 523 N.E.2d 160, 164, 169 Ill. App. 3d 21, 27 (Ill. App. Ct. 1st Dist. 1986).

analysis, both parties were able to cite cases in which courts have found in their favor regarding the sufficiency of these factors in supporting an exercise of jurisdiction. *Compare Lakeview Tech., Inc. v. Vision Solutions, Inc.*, 2007 WL 79246, at *7 (N.D. Ill. Jan. 9, 2007) (declining to exercise personal jurisdiction over a defendant who was physically present in Illinois four times in connection with the disputed transaction and also engaged in continuing telephone contacts with Illinois), *with Olson v. Jenkens & Gilchrist*, 461 F. Supp. 2d 710, 723-24 (N.D. Ill. 2006) (exercising personal jurisdiction over a defendant that was only physically present in Illinois for one day in relation to the transaction at issue but that communicated repeatedly with an Illinois defendant regarding that transaction).

Both parties discuss this court's opinion granting a motion to dismiss based on a finding of a lack of personal jurisdiction over the defendant in *Stericycle, Inc. v. Sanford*, 2002 WL 31856720 (N.D. Ill. Dec. 20, 2002) (Lefkow, J.). *Stericycle* involved a somewhat complex fact situation. Stericycle, Inc. ("Stericycle") had a right of first refusal to acquire certain assets owned by a company called Med/Waste, Inc. ("Med/Waste"). Med/Waste, in turn, owed money to Craig and Mary Jo Sanford ("the Sanfords"). The Sanfords approached Stericycle to propose an agreement whereby Stericycle would waive its right of first refusal so that the Sanfords could purchase the assets, which they would then turn around and sell to Stericycle. 2002 WL 31856720, at *2. The Sanfords were citizens of Pennsylvania and Stericycle was a Delaware corporation with its principal place of business in Illinois. *Id.* at *1.

Craig Sanford initiated the discussion with Stericycle regarding the possibility of an agreement. *Id.* at *2. The negotiations between the Sanfords and Stericycle included at least 15 phone calls between the Sanfords and Stericycle, several exchanges of draft documents, and a

7

faxed final agreement. *Id.* at *2-*3. Throughout the negotiations, the Sanfords sought Stericycle's assistance with respect to the dealings with Med/Waste, which included sending Stericycle copies of draft letters and seeking advice from Stericycle's attorneys (who were located in Illinois). *Id.* at *3.[9] Ultimately, the Sanfords refused to carry out the terms of the agreement, and Stericycle brought a breach of contract suit in Illinois. *Id.*

In declining to find personal jurisdiction over the Sanfords, this court focused on the facts that the subject of the contract was assets located outside of Illinois, the contract was to be performed entirely outside of Illinois, and the contract was executed outside of Illinois. *Id.* at *6. Although the Sanfords had initiated the negotiations and had frequent communications with Stericycle, those facts along with the existence of the contract were their only connections with Illinois. *Id.* at *7. Therefore, this court found that the Sanfords had not purposely availed themselves of the privilege of conducting business in Illinois and that it would be unreasonable to require them to litigate here. *Id.* It distinguished cases in which at least some performance in Illinois was contemplated by the parties to a contract, saying, "Cases Stericycle points to with contracts involving out-of-state parties at the very least also included some connection or performance related to Illinois. The court does not believe such facts are present here." *Id.* (citing *Global Relief v. New York Times Co.*, 2002 WL 31045394 (N.D. Ill. Sept. 11, 2002); *General Binding Corp. v. McBride*, 2002 WL 825032 (N.D. Ill. April 30, 2002)).

In comparison, the most well-known personal jurisdiction case involving an alleged

---

[9] Merle West argues that unlike *Stericycle*, where the defendants traveled to Illinois for a meeting with the plaintiff, no one from Merle West ever came to Illinois in connection with the agreement in this case. This is not an accurate comparison, however, because in *Stericycle* this court found that the Sanfords' trip to Illinois was not made in connection with the allegedly breached contract and therefore did not consider it in the personal jurisdiction analysis. 2002 WL 31856720, at *6.

8

breach of contract, *Burger King*, fell on the other side of the line. There, the out of state defendants (prospective franchisees) signed a contract with Burger King Corporation ("Burger King") that stated that it was established in Miami, Florida, governed by Florida law, and all payments were to be made to Burger King's Miami headquarters. 471 U.S. at 466. In connection with the contract, one of the franchisees attended required training at the Miami headquarters and purchased $165,000 worth of required equipment from the Miami headquarters. *Id.* Additionally, there was significant negotiation regarding the final agreement between the defendants and Miami headquarters. *Id.* That agreement contemplated a 20-year franchise relationship. *Id.* Relations between Burger King and the defendants soured, precipitating additional prolonged negotiations between Miami headquarters and the defendants, before Burger King terminated the franchise and sued the defendants. *Id.* at 468.

The Supreme Court found that Florida's exercise of personal jurisdiction over the franchisees did not offend due process. *Id.* at 482. It focused on the substantiality of the agreement and the franchisees' voluntary and knowing actions in reaching out to a Florida company to create a long-term relationship from which they would derive significant benefits. *Id.* at 479. The franchisees caused foreseeable injuries to Burger King in Florida, making it reasonable to call them to account there for those injuries. *Id.* at 480.

After reviewing all of the circumstances in this case, the court finds that Merle West's actions bring it closer to *Burger King* than to *Stericycle*. Therefore, Illinois may exercise personal jurisdiction over Merle West without violating Merle West's due process rights. On the one hand, representatives of Merle West were never physically present in Illinois in connection with the agreement, the purpose of the agreement was to sell property located in Oregon, the

9

agreement was executed in Oregon (but mailed to Illinois), and nothing required performance by either party in Illinois. But as the cases above demonstrate, none of these factors is dispositive.

Merle West knew when it began negotiations with Citadel that Citadel is located in Chicago. Despite the fact that the contract did not require Citadel to perform in Illinois, Merle West was aware that Citadel would do a substantial amount of preparation work here; the contract explicitly contemplated that such preparation work was likely and that costs for that work would be incurred. The nature of the transaction was such that a great deal of Citadel's total performance would consist of preparation work, including drafting documents and negotiating details, all of which would need to occur before the deal closed (which was also anticipated to occur in Chicago). The deal was specially tailored to the needs of the parties. Merle West's participation in the conference calls with Citadel and the other Illinois companies involved shows that it knew that Citadel's preparation work was not just likely, but was in fact well underway. These calls are also themselves relevant to the reasonableness of exercising personal jurisdiction, because a real estate financing transaction is naturally based on telephone, mail, and facsimile contacts. *Heritage House*, 906 F.2d at 281.

Furthermore, it is clear that in this case Merle West was contemplating an ongoing relationship with Citadel, because the parties agree that they anticipated that Merle West would lease the property back from Citadel after the deal closed. Merle West also knew that cancelling the transaction would have an effect on all of the Illinois companies that it had been working with to develop the deal over the course of several months and that it would be liable for Citadel's "out-of-pocket costs." Finally, the court notes that Merle West made a partial payment to Citadel in Illinois of $40,000. For all of these reasons, it is reasonable to conclude that Merle

West intentionally reached out to deal with an Illinois corporation, created a continuing relationship, and should have foreseen that it could be subject to suit here should the transaction go awry.

Finally, considerations of fair play and substantial justice do not persuade the court that this case should not be litigated in Illinois. While Illinois is clearly a less convenient forum for Merle West than Oregon would be, this case is not exceptional in that regard. Illinois has a strong interest in adjudicating this dispute because it involves several Illinois companies. Therefore, Citadel has made out a *prima facie* case of personal jurisdiction over Merle West and it is reasonable to require Merle West to litigate in Illinois.

### 3.    Failure to state a claim for which relief may be granted

Merle West also moves to dismiss Citadel's claim for attorney's fees for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Citadel is seeking to recover the attorney's fees that it paid to the Illinois law firms that it retained in connection with the preparation to purchase Merle West's property. It invokes the "out-of-pocket costs" provision in the parties' agreement. Merle West objects on the basis that this would violate the American Rule, under which attorney's fees are not recoverable unless there is either a statute or an agreement between the parties that specifically requires their payment. Because the agreement here does not explicitly mention attorney's fees, Merle West concludes that Citadel cannot claim them as damages in this breach of contract action.

Merle West's argument is unavailing because the American Rule does not apply in this situation. Under the American Rule, "the prevailing litigant is ordinarily not entitled to collect a

11

reasonable attorneys' fee from the loser." *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 127 S. Ct. 1199, 1203, 167 L. Ed. 2d 178, (2007) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Hauenstein v. Lynham*, 100 U.S. 483, 490-491, 25 L. Ed. 628 (1880); *Arcambel v. Wiseman*, 3 Dall. 306, 1 L. Ed. 613 (1796)). Here, Citadel is not seeking to recover the fees that it is spending in this litigation with Merle West. Instead, it seeks to recover fees that were paid to third parties outside of any litigation. Citadel is not acting as a prevailing litigant attempting to recover fees from a loser. The fees that Citadel seeks are considered ordinary damages and may be recoverable without running afoul of the American Rule. *See, e.g., Anderson Indus., Inc. v. Towers, Perrin, Forster & Crosby, Inc.*, 1994 WL 96684, at *1 (N.D. Ill. March 22, 1994) (citing *Shacket v. Roger Smith Aircraft Sales, Inc.*, 651 F. Supp. 675, 697 (N.D. Ill. 1986); *Duignan v. Lincoln Towers Ins. Agency, Inc.*, 667 N.E.2d 608, 613, 282 Ill. App. 3d 262, 268 (Ill. App. Ct. 1st Dist. 1996). In *Sorenson v. Fio Rito*, 413 N.E.2d 47, 51-52, 90 Ill. App. 3d 368, 372 (Ill. App. Ct. 1980), cited by several of these cases, the court explained, "the policy against awarding attorneys' fees was intended to apply only where a successful litigant seeks to recover his costs in maintaining the lawsuit. We do not believe it was intended to preclude a plaintiff from recovering losses directly caused by the defendant's conduct simply because those losses happen to take the form of attorneys' fees."

Whether Citadel ultimately can recover the attorney's fees it expended in preparing to purchase Merle West's property remains to be seen.[10] Its claim will not, however, be dismissed

---

[10] In the affidavit of David Varwig, Senior Managing Director and CEO of Citadel, Varwig says, "These costs included the costs of preparing the documents for the new ownership structure for the building, the documentation for the commercial paper note financing, and documentation for the acquisition from and lease to

as a matter of law under Rule 12(b)(6).

4. **Order**

Defendant Merle West's motion to dismiss [Dkt. No. 7] is denied. Merle West is ordered to answer the complaint. This case will be called for status on July 3, 2007 at 9:30 A.M.

Dated: June 13, 2007  ENTER:  *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

---

Merle West, and other costs for items needed to complete the transaction." Merle West does not specifically dispute this statement. This is an issue on the merits, however, and does not need to be resolved for purposes of this motion.