# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CITADEL GROUP LIMITED,** a Delaware Corporation, ) ) ) **Plaintiff,** ) ) v. ) ) **SKY LAKES MEDICAL CENTER, INC.,** an Oregon nonprofit public benefit corporation, ) ) ) ) **Defendant.** ) | No. 06-C-6162 Judge Joan Humphrey Lefkow Magistrate Judge Nolan |

## MEMORANDUM OPINION AND ORDER

Defendant/Counter-Plaintiff Sky Lakes Medical Center, Inc. ("Sky Lakes")[1] has filed a two-count countercomplaint against Plaintiff/Counter-Defendant Citadel Group Limited ("Citadel") claiming that Citadel is liable under either a breach of contract or an unjust enrichment theory for damages of not less than $40,000 plus costs, interest, and attorneys' fees.

Citadel has filed a motion to dismiss Sky Lakes' counterclaims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the following reasons, the court will deny Citadel's motion to dismiss as to Count I (breach of contract) but grant it as to Count II (unjust enrichment).

## I. Facts

The following facts are taken from Sky Lakes' counterclaim and are assumed to be true for the purposes of this motion to dismiss. In early 2004, Citadel and Sky Lakes entered into discussions whereby Citadel would acquire and finance a medical building owned by Sky

---

[1] Sky Lakes was formerly known as Merle West Medical Center, Inc. and was referred to as such in this court's opinion of June 13, 2007.

Lakes in Klamath Falls, Oregon. Citadel would then lease the building back to Sky Lakes. The benefit of the deal would have been to provide Sky Lakes with cash while allowing it to retain operational control of the building.

During the parties' initial and ongoing discussions, Sky Lakes insisted that a necessary condition of the proposed sale and leaseback was that the parties treat the transaction as an off-balance sheet transaction.[2] This was a critical requirement for Sky Lakes because it did not want the transaction to affect its borrowing ability. During the parties' negotiations in 2004 and 2005, Sky Lakes reiterated the importance that the transaction be treated as an off-balance sheet transaction several times. Citadel assured Mr. Rybolt that it would treat it as such.

On December 22, 2004, Citadel sent Sky Lakes a letter outlining its proposal to go forward with the project of acquiring and financing the building ("the letter agreement").[3] The letter agreement was signed by Citadel's Chief Executive Officer. Sky Lakes, through its Chief Financial Officer, signed it on March 25, 2005. Both parties agree that the letter agreement then became a binding agreement to go forward in pursuit of an ultimate acquisition and financing contract. The following language was included in the letter agreement:

> This programmatic approach minimizes [Sky Lakes'] financial exposure, while simultaneously enabling the medical center to take full advantage of its market

---

[2] Off-balance sheet transactions are a form of financing used by companies to keep both debt to equity and leverage ratios low. In contrast to debt that appears on a balance sheet, such as loans, companies can keep large capital expenditures off their balance sheets through the use of vehicles such as joint ventures, research and development partnerships, and operating leases. *See* Investopedia, Off-Balance Sheet-Financing, http://www.investopedia.com/terms/o/obsf.asp (last visited April 28, 2008).

In this case, it appears the parties were discussing an operating lease, one of the most common forms of off-balance sheet financing. Where an operating lease is used, the asset itself is kept on the lessor's balance sheet, and the lessee need only report the rental expense for its use of the asset (rather than carrying the debt on its balance sheet). The parties must follow the Generally Accepted Accounting Principles to ensure that the lease is expensed (kept off the balance sheet) rather than capitalized (included on the balance sheet). *See* i*d.*

[3] The full letter agreement is attached to Citadel's motion to dismiss as Exhibit A.

opportunities… This model is consistent with [Sky Lakes'] capital deployment strategy and generates additional benefits such as:

\*\*\*

√ Improved hospital debt capacity implications.

Pursuant to the letter agreement, Sky Lakes paid a $40,000 good faith deposit to Citadel.

Citadel never propounded a draft contract that would treat the proposed matter as an off-balance sheet transaction. Thus, in October of 2005, Sky Lakes decided not to continue with the negotiations.

**II. Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). The Complaint need only give "'fair notice of what the ... claim is and the grounds upon which it rests.'" *EEOC* v. *Concentra Health Serv., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citation omitted). The court is not required to "ignore any facts set forth in the complaint that undermine the plaintiff's claim [nor does it] assign any weight to unsupported conclusions of law." *McCready* v. *eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006); *LeBlang Motors, Ltd.* v. *Subaru of Am., Inc.*, 148 F.3d 680, 690 (7th Cir. 1998). Additionally, factual allegations must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.* v. *Twombly*, – U.S. –, 127 S. Ct. 1955, 1964-65,

167 L. Ed. 2d 929 (2007).

## III. Discussion

### A. Count I – Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

In Count I of its countercomplaint, Sky Lakes claims a breach of contract based on "Citadel's breach of the parties' understandings, agreements, and contract." Countercomplaint at ¶ 14. Sky Lakes claims that Citadel breached the parties' contract because Citadel failed to propound a draft contract treating the proposed sale and leaseback of the Klamath Falls medical building as an off-balance sheet transaction.[4] That is, Sky Lakes contends that a term of the letter agreement was that the parties would treat the transaction as off-balance sheet in their ultimate acquisition and financing contract.

In support of its contention that the parties agreed to treat the sale and leaseback of the building as an off-balance sheet transaction, Sky Lakes points to the parties' conversations and to the letter agreement. Sky Lakes states, "During many conversations in 2004 and 2005, the parties agreed and understood that the proposed transaction was to be treated as an off-balance sheet transaction. The parties' agreements and understandings, as well as the December 22, 2004 executed proposal letter, form a legally enforceable contract between the parties …." Countercomplaint at ¶ 15.

Citadel raises two arguments in its motion to dismiss regarding the breach of contract counterclaim. First, the letter agreement does not refer to an off-balance sheet transaction and that term is not used in the letter agreement. Second, the discussions and negotiations between

---
[4] Sky Lakes also asserts that this conduct amounts to a breach of "the parties' covenant of good faith and fair dealing under the contract implied by law." Countercomplaint at ¶ 18. Neither party, however, has addressed this language.

the parties are not part of the letter agreement. Rather, the language of the letter agreement is unambiguous and the court must limit its interpretation to the plain meaning of the words used.

Sky Lakes' response to the motion to dismiss is three-fold. First, it cites the language of the letter agreement and argues, "at this stage, the Court must accept as true Sky Lakes' allegation that this language reflects the parties' agreement that the transaction was to be treated as an off-balance sheet transaction." Response at 6. Second, Sky Lakes argues that the letter agreement was not the only agreement between the parties and that the contract includes the parties' discussions, which treat the proposal as an off-balance sheet transaction. Finally, Sky Lakes asserts that even if the court finds that the letter agreement does not require an off-balance sheet transaction and does not look at the parties' discussions, Sky Lakes has stated a claim for relief because it could have alleged that the subsequent oral agreements of the parties modified the terms of the letter agreement.

Sky Lakes' contention that the court must accept its interpretation of the letter agreement as requiring an off-balance sheet transaction is incorrect. Under Illinois law,[5] the Court is not limited by Sky Lakes' interpretation of a contract. Where the non-movant's allegations conflict with the terms of the contract, the court need not accept those allegations as true. *Jackson Nat'l Life Ins. Co.* v. *Gofen & Glossberg, Inc.*, 882 F. Supp. 713, 718 (N.D. Ill. 1995) (citing *Graue Mill Dev. Corp.* v. *Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1991) (finding that the terms of a written contract prevail over pleadings)). Additionally, the issue of contract interpretation is not one for the trier of fact; matters regarding contract interpretation involve questions of law. *Bourke* v. *Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998)

---

[5] The parties have not challenged the application of Illinois law, and "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood* v. *Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991).

("Contract interpretation, including the question of whether a contract is ambiguous, involves conclusions of law"); *see also Barnett* v. *Ameren Corp.*, 436 F.3d 830, 833 (7th Cir. 2006) (citing *Diehl* v. *Twin Disc, Inc.*, 102 F.3d 301, 305 (7th Cir. 1996)). Thus, the court is not bound by Sky Lakes' interpretation in ruling on this motion to dismiss.

The next question is whether the court can refer to the parties' discussions, which took place in 2004 and 2005, in interpreting the terms of the letter agreement.[6] Where a written contract exists, Illinois courts apply the "four corners" rule of contract interpretation: if the contract appears capable of only one interpretation then the language of the contract alone governs the relationship between the parties and any oral agreements between the parties are irrelevant. *See Bourke*, 159 F.3d at 1036 (citations omitted) (declining to refer to extrinsic evidence where a contract was unambiguous). The terms of an unambiguous contract "should be generally enforced as they appear, and those terms will control the rights of the parties." *Dowd & Dowd, Ltd.* v. *Gleason*, 693 N.E.2d 358, 369, 181 Ill. 2d 460, 230 Ill. Dec. 229 (1998) (citations omitted). Thus, the language of the contract will govern unless it is ambiguous. If it is ambiguous, however, extrinsic evidence may be admissible to aid in ascertaining the intent of the parties. *Wald* v. *Chi. Shippers Ass'n*, 529 N.E.2d 1138, 1146, 175 Ill. App. 3d 607, 618, 125 Ill. Dec. 62, 70 (Ill. App. Ct. 1st Dist. 1988).

---

[6] Sky Lakes argues that the contract between the parties includes both the letter agreement and the negotiations between the parties. This is not supported by Illinois law. Rather, it is "well established that preliminary negotiations to a contract are generally merged into the final written agreement and that the agreement is presumed to include all material terms." *Lewis, M.D.* v. *Loyola Univ. of Chi.*, 500 N.E.2d 47, 50, 149 Ill. App. 3d 88, 93, 102 Ill. Dec. 425, 428 (Ill. App. Ct. 1st Dist. 1986) (citing *Howard A. Koop & Assoc.* v. *KPK Corp.*, 457 N.E.2d 66, 119 Ill. App. 3d 391, 75 Ill. Dec. 276 (Ill. App. Ct. 2nd Dist. 1983)). Even if a written contract is not expressive of the complete agreement between the parties, prior discussions do not vary the contract terms, but serve only to exemplify the terms of the agreement. *Lewis M.D.*, 500 N.E.2d at 50. "Additionally, whether a writing which contains the essential terms of a contract but which contemplates the later execution of a formal document is a contract or merely negotiation depends on the intent of the parties." *Id.* (citation omitted). Here, both parties agree that the December 22, 2004 letter agreement is a contract. Thus, if admissible, the parties' negotiations would aid only in interpreting the language of the letter agreement and exemplifying its terms.

In this case, although both parties say that the letter agreement is not ambiguous, they argue for different interpretations of the same language. The fact that the parties disagree about the meaning of the contractual language does not render the contract ambiguous. *Interim Health Care of N. Ill., Inc.* v. *Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000); *Flora Bank & Trust* v. *Czyzewski*, 583 N.E.2d 720, 725, 222 Ill. App. 3d 382, 164 Ill. Dec. 804 (Ill. App. Ct. 5th Dist. 1991). The language is only ambiguous if it is indefinite and can reasonably be interpreted more than one way. *Markin* v. *Chebemma Inc.*, 526 F. Supp. 2d 890, 894 (N.D. Ill. 2007) (citing *William Blair & Co., LLC* v. *FI Liquidation Corp.*, 830 N.E.2d 760, 759, 358 Ill. App. 3d 324, 294 Ill. Dec. 348 (Ill. App. Ct. 1st Dist. 2005)). But "it is not ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract." *Flora Bank & Trust*, 583 N.E.2d at 725.[7]

In reviewing a district court's motion to dismiss, the Seventh Circuit in *Bourke* outlined the application of law where both parties argue that the language of the contract is "unambiguous and supports their own interpretation." *Bourke,* 159 F.3d at 1037. If the court finds one interpretation to be reasonable, it must determine whether the other interpretation is also reasonable. *Id.* If only one interpretation is reasonable, the contract is unambiguous and the court can interpret its meaning as a matter of law without the use of extrinsic evidence. *Id.* (citation omitted). If both interpretations are reasonable, then the contract is, "at least at first blush, ambiguous." *Id.*

---

[7] The Seventh Circuit has recognized at least two kinds of ambiguity. First, a "latent" or "extrinsic" ambiguity arises where the terms are clear but outside circumstances create an inconsistency. *Bourke*, 159 F.3d at 1036 (citing *Raffles* v. *Wichelhaus*, 2 H. & C. 906, 159 Eng. Rep. 375 (Ex. 1864) (finding extrinsic evidence admissible where the parties agreed that cotton was to be shipped aboard the ship named Peerless, but more than one Peerless existed)). A "manifest" or "intrinsic" ambiguity "arises when the express language of the contract itself is fairly susceptible to more than one reasonable reading." *Bourke*, 159 F.3d at 1037.

If the contract is ambiguous, then the next question is whether the court can resolve that ambiguity without the use of extrinsic evidence. *Id.* If the court cannot do so, the ambiguity cannot be resolved on a motion to dismiss because that would require consideration of questions of fact and matters outside the pleadings. *Quake Const., Inc.* v. *Am. Airlines, Inc.*, 565 N.E.2d 990, 994, 141 Ill. 2d 281, 152 Ill. Dec. 308 (1990) ("If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a circuit court cannot properly determine on a motion to dismiss); *see also Countryman* v. *Indus. Comm'n,* 686 N.E.2d 61, 64, 292 Ill. App. 3d 738, 741, 226 Ill. Dec. 712, 715 (Ill. App. Ct. 2nd Dist. 1997); *Wald* v. *Chi. Shippers Ass'n*, 529 N.E.2d at 1146 (where extrinsic evidence is introduced, the question of the meaning of the language is generally left to the jury unless the court determines that a reasonable person could reach only one conclusion).

In the current case, the key language of the letter agreement provides as follows:

This programmatic approach minimizes [Sky Lakes'] financial exposure, while simultaneously enabling the medical center to take full advantage of its market opportunities… This model is consistent with [Sky Lakes'] capital deployment strategy and generates additional benefits such as:

\*       \*       \*

√   Improved hospital debt capacity implications.

Sky Lakes points to the language regarding "improved hospital debt capacity implications" to support its interpretation that the parties agreed the transaction was to be treated as an off-balance sheet transaction. Companies use off-balance sheet transactions to keep debt-to-equity ratios low, thus providing additional debt capacity. *See supra* note 2. Based on these circumstances, it is reasonable to interpret the phrases "enabling the medical center to take full advantage of its market opportunities" and "improved hospital debt capacity implications" as

8

language invoking an off-balance sheet transaction, because both phrases imply an ability on the part of Sky Lakes to take advantage of additional debt capacity as a result of the transaction.

Citadel's only argument on the ambiguity issue is that the letter agreement does not refer to an off-balance sheet transaction and that the term is not mentioned in the letter agreement. While it is true that the term "off-balance sheet" is not mentioned, the Court looks at the contract "as a whole, giving effect, to the extent possible, to all contractual provisions. In so doing, the … language will be interpreted according to its plain, ordinary and popular meaning." *O'Rourke* v. *Access Health, Inc*, 668 N.E.2d 214, 220, 282 Ill. App. 3d 394, 404, 218 Ill. Dec. 51, 57 (Ill. App. Ct. 1st Dist. 1996). Other terms in the letter agreement promise to "provide additional financial liquidity," "to maximize hospital proceeds," and to "maintain[] superior creditworthiness in the capital markets" for Sky Lakes. Ex. A to motion to dismiss, Dkt. No. 41, at 1. All of this language, in addition to the language cited by Sky Lakes, could implicate an off-balance sheet transaction.

After looking at the letter agreement as a whole, however, the court has determined that both parties' interpretations are reasonable. Many of its terms are consistent with Sky Lakes' contention that the parties were contemplating the use of an off-balance sheet transaction. Those terms, however, do not show that an off-balance sheet transaction was necessarily a part of the letter agreement. For example, the letter agreement states that the proposed model generates the benefit of "[i]mproved hospital debt capacity implications." While an off-balance sheet transaction could provide that benefit, it is also possible that other features of the parties' agreement could lead to improved debt capacity. Because an off-balance sheet transaction is not specifically mentioned in the letter agreement, and because an off-balance sheet transaction is not the only possible transaction that would be consistent with its explicit terms, the court cannot

9

conclude that an off-balance sheet transaction is required by the letter agreement. Therefore, the letter agreement is ambiguous and the court cannot resolve that ambiguity without considering extrinsic evidence. Because doing so will involve consideration of questions of fact and matters outside the pleadings, the issue is not appropriate for resolution on this motion to dismiss.

There is no need to review the possibility of subsequent oral modifications to the letter agreement at this time. It is true that Illinois law allows parties to alter or modify a written contract by subsequent oral agreement. *See, e.g.*, *A.W. Wendell & Sons, Inc.* v. *Qazi*, 626 N.E.2d 280, 287, 254 Ill. App. 3d 97, 105, 195 Ill. Dec. 247, 254 (Ill. App. Ct. 2nd Dist. 1993) (collecting cases); *see also Tadros* v. *Kuzmak*, 660 N.E. 2d 162, 170, 277 Ill. App. 3d 301, 312, 213 Ill. Dec. 905, 913 (Ill. App. Ct. 1st Dist. 1995) (same). And where such a subsequent oral agreement exists, the parties' discussions may be admissible to show modification. *See E.A. Cox Co.* v. *Road Savers Int'l Corp.*, 648 N.E. 2d 271, 277, 271 Ill. App. 3d 144, 152, 207 Ill. Dec. 815, 821 (Ill. App. Ct. 1st Dist. 1995).

In this case, however, Sky Lakes did not include allegations of a subsequent oral modification in its counterclaim. Although Sky Lakes' counterclaim refers to "[t]he parties' agreements and understandings, as well as the December 22, 2004 executed proposal letter," Countercomplaint at ¶ 15, Sky Lakes does not allege a subsequent modification of the terms of the letter agreement. Sky Lakes is the master of its own countercomplaint, and the court will not endeavor to research what claims it could have made. *See Mizuho Corp. Bank (USA)* v. *Cory & Assoc., Inc.*, 341 F.3d 644, 651 (7th Cir. 2003).

Because the letter agreement can reasonably be interpreted to require an off-balance sheet transaction, Sky Lakes has stated a claim for breach of contract. Citadel's motion to dismiss will therefore be denied as to Count I.[8]

### B. Count II – Unjust Enrichment

In count II of its countercomplaint, Sky Lakes reasserts and incorporates its breach of contract claim but claims in the alternative that "Citadel unjustly received the benefit of Sky Lakes' $40,000 good faith deposit payment." Countercomplaint at ¶ 24. Sky Lakes argues that it "agreed to proceed with the proposed transaction with Citadel, and any due diligence associated with said transaction, on the understanding that the transaction was to be treated as an off-balance sheet transaction." Countercomplaint at ¶ 22.

In its motion to dismiss, Citadel argues that the action for unjust enrichment is improper where a specific contract governs the relationship between the parties. Citadel states that because "Sky Lakes acknowledges in Count I of its counterclaim that there is a 'specific contract that governs the relationship of the parties,' i.e. the December 22, 2004 letter agreement, and these allegations are incorporated by reference into Count II … there is no legal basis for an unjust enrichment claim." Motion to dismiss at ¶ 8.

It is true that "[t]he theory of unjust enrichment is based upon a contract implied in law and, therefore, does not apply where there is a specific contract that governs the relationship of the parties." *Perez* v. *Citicorp Mortgage, Inc.,* 703 N.E.2d 518, 526, 301 Ill. App. 3d 413, 424, 234 Ill. Dec. 657, 665 (Ill. App. Ct. 1st Dist. 1998); *see also B & B Land Acquisition, Inc.* v.

---

[8] Citadel also argues that "when a written contract purports on its face to be a complete expression of the whole agreement, the presumption is that the parties included in it every material term." Motion to dismiss at ¶ 5. This argument is not persuasive because the letter agreement includes no such merger clause.

*Mandell*, 714 N.E.2d 58, 63, 305 Ill. App. 3d 1068, 1073, 239, Ill. Dec. 500, 505 (Ill. App. Ct. 2nd Dist. 1999) ("Because the theory [of unjust enrichment] is based upon an implied contract, it has no application when an express contract governs the relationship between the parties.").

The Seventh Circuit has stated that "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract. The reason for prohibiting a claim of unjust enrichment between contracting parties is to prohibit a party whose expectations were not realized under the contract from nevertheless recovering outside the contract." *Utility Audit, Inc.* v. *Horace Mann Serv. Corp.* 383 F.3d 683, 688-89 (7th Cir. 2004) (internal citations omitted). Therefore, because the letter agreement governed the relationship between Citadel and Sky Lakes, at least insofar as the proposed transaction was concerned, Sky Lakes' unjust enrichment claim appears to be barred.

Sky Lakes' unjust enrichment counterclaim is not saved by the fact that it pleads unjust enrichment in the alternative to its breach of contract counterclaim. Although Fed. R. Civ. P. 8(e)(2) allows Sky Lakes to plead alternative and inconsistent claims, when a party has incorporated allegations of a specific contract into an unjust enrichment claim, courts in this district have granted motions to dismiss those unjust enrichment claims. *See e.g., The Sharrow Group* v. *Zausa Dev. Corp.*, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 6, 2004) ("Under Illinois law, … unjust enrichment [is] unavailable where the parties have entered into an express contract."); *Canadian Pac. Ry. Co.* v. *Williams-Hayward Protective Coatings, Inc.*, 2003 WL 1907943, at *5 (N.D. Ill. Apr. 17, 2003) ("While Plaintiff is entitled under Federal Rule of Civil Procedure 8(e)(2) to plead the alternative claims of breach of contract and unjust enrichment despite the inconsistency between those claims, Plaintiff's unjust enrichment claim must not include allegations of a specific contract governing the parties['] relationship."). Sky Lakes

incorporates by reference paragraphs 1 through 19 of its countercomplaint into the unjust enrichment claim. In both paragraphs 14 and 17, Sky Lakes refers to a breach of "the parties' understanding, agreements and contract." For these reasons, the court must dismiss Sky Lakes' counterclaim for unjust enrichment as it has incorporated allegations of breach of a specific contract into that counterclaim.[9] The motion to dismiss will therefore be granted as to Count II.

---

[9] Citadel also argues that the motion to dismiss should be granted because unjust enrichment must be supported by allegations of wrongdoing. Sky Lakes cites opposing case law, which does not require a showing of wrongdoing.

It is unclear whether Illinois law requires a claimant to show wrongdoing in support of an unjust enrichment claim. The general rule only requires the plaintiff to allege that the defendant unjustly retained a benefit to the plaintiff's detriment and that the retention of that benefit violates the fundamental principals of justice, equity, and good conscience. *HPI Health Care Servs., Inc.* v. *Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 160, 137 Ill. Dec. 19, 26 (1989). Based on this rule, some Illinois courts have not required the claimant to make any further showing. *See e.g., Stathis* v. *Geldermann, Inc*., 692 N.E.2d 798, 812, 295 Ill. App. 3d 844, 229 Ill. Dec. 809 (Ill. App. Ct. 1st Dist. 1998) ("A cause of action based upon unjust enrichment does not require fault or illegality on the part of defendants[.]"); *see also Eighteen Invs., Inc.* v. *Nationscredit Fin. Servs. Corp.*, 876 N.E.2d 1096, 1103, 376 Ill. App. 3d 527, 535, 315 Ill. Dec. 506, 513 (Ill. App. Ct. 1st Dist. 2007).

Other Illinois courts, however, have required the claimant to show more. *See, e.g.*, *Lewis* v. *Lead Indus. Assoc., Inc*., 793 N.E.2d 869, 877, 342 Ill. App. 3d 95, 105-106, 276 Ill. Dec. 110, 118 (1st Dist. 2003) ("In order for a cause of action for unjust enrichment to exist, there must be some independent basis which establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty.") (citing *Alliance Acceptance Co.* v. *Yale Ins. Agency, Inc.*, 648 N.E.2d 971, 977, 271 Ill. App. 3d 483, 492, 208 Ill. Dec. 49 (Ill. App. Ct. 1st Dist. 1995); *Charles Hester Enter., Inc.*, v. *Ill. Founders Ins. Co*., 484 N.E.2d 349, 354-55, 137 Ill. App. 3d 84, 90-91, 91 Ill. Dec. 790 (Ill. App. Ct. 5th Dist. 1985)); *see also McKay* v. *Kusper*, 624 N.E. 2d 1140, 1150, 252 Ill. App. 3d 450, 463, 191 Ill. Dec. 762, 772 (Ill. App. Ct. 1st Dist. 1993) ("[U]njust enrichment is not descriptive of conduct that, standing alone, will justify an action for recovery. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, and may be redressed by a cause of action based upon that improper conduct[.]"). The Seventh Circuit recently indicated "that the wrongful conduct predicate to unjust enrichment is not an absolute requirement in Illinois …." *Ass'n Benefit Servs. Inc.* v. *Caremark RX, Inc.*, 493 F.3d 841, 854 n.7 (7th Cir. 2007) (citing *Norton v. City of Chi.*, 690 N.E.2d 119, 126, 293 Ill. App. 3d 620, 228 Ill. Dec. 810 (Ill. App. Ct. 1st Dist. 1997) (describing wrongdoing as only one possible theory upon which to support a claim for unjust enrichment)).

The Court need not decide in this situation which case law applies because Sky Lakes cannot recover for unjust enrichment where it has pled that the parties' relationship is governed by a specific contract.

13

**IV.     Conclusion and Order**

For the foregoing reasons, Citadel's motion to dismiss Sky Lakes' countercomplaint [#41] is granted in part and denied in part.  Count II of Sky Lakes' countercomplaint (its unjust enrichment counterclaim) is dismissed.

Dated: April 30, 2008        Enter:_____/s/ Joan H. Lefkow_____
                                             JOAN HUMPHREY LEFKOW
                                             United States District Judge